# United States Court of Appeals for the Federal Circuit

---

**ALBEMARLE CORPORATION & SUBSIDIARIES,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2015-5015

---

Appeal from the United States Court of Federal Claims in No. 1:12-cv-00184-MBH, Judge Marian Blank Horn.

---

## ON PETITION FOR REHEARING

---

Decided: October 22, 2015

---

JEROME LIBIN, Sutherland Asbill & Brennan LLP, Washington, DC, argued for plaintiff-appellant.

DEBORAH K. SNYDER, Tax Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by TERESA E. MCLAUGHLIN, GILBERT STEVEN ROTHENBERG, CAROLINE D. CIRAOLO, DIANA L. ERBSEN.

————————————

Before PROST, *Chief Judge,* BRYSON and HUGHES, *Circuit Judges.*

BRYSON, *Circuit Judge.*

Albemarle Corporation and Subsidiaries ("Albemarle") petitions for rehearing of this court's August 13, 2015, decision on its appeal from the Court of Federal Claims. For the reasons set forth below, we deny the petition.

1. In its petition, Albemarle first argues that the decision in this case conflicts with this court's recent decision in *Salem Financial, Inc. v. United States*, 786 F.3d 932 (Fed. Cir. 2015). Albemarle's argument is not really based on the *Salem* case, which says nothing about when foreign taxes accrue, but instead is based on the Court of Federal Claims' decision in *Reading & Bates Corp. v. United States*, 40 Fed. Cl. 737 (1998). That case was cited in *Salem*, but for an entirely different proposition having nothing to do with the accrual date for foreign tax liability.

In any event, the *Reading & Bates* case provides no support for Albemarle's argument. The government argued in that case that the plaintiff was required to report income from a tax indemnification agreement in the tax years to which the income related (1976 and 1977). The plaintiff argued that income resulting from the indemnification agreement did not accrue until 1984, when the plaintiff's contested tax liability for foreign taxes for the years 1976 and 1977 was resolved. 40 Fed. Cl. at 750. The Court of Federal Claims agreed with the plaintiff that the foreign tax contest had delayed the accrual of the plaintiff's income until 1984, because the amount that the plaintiff was entitled to receive under the indemnification agreement could not be ascertained until the contest was over. *Id.* at 753.

*Reading & Bates* does not support Albemarle's position that a contested tax liability "actually accrues" in the contest resolution year for two reasons. First, the *Reading & Bates* decision deals with when *income* accrues for purposes of calculating "gross income" under the Tax Code; the court did not address when *foreign taxes* "actually accrue" for purposes of the statute of limitations. Second, the court in *Reading & Bates* expressly distinguished between the accrual of income and the accrual of foreign tax credits, noting that the relation-back rule applies to the accrual of foreign taxes, but not to accrual of income. 40 Fed. Cl. at 753 ("Defendant's argument is based on the erroneous assumption that foreign tax credits are treated in the same manner as income.").

2. Albemarle next argues that the panel opinion in this case ignored the Supreme Court's opinion in *Dixie Pine Products Co. v. C.I.R.*, 320 U.S. 516 (1944), and the accrual principles discussed in that opinion.

In fact, the panel opinion discussed at some length both the *Dixie Pine* case and the line of authority based on that decision. Albemarle simply disagrees with the panel's distinction of that line of cases. In particular, Albemarle argues that the panel improperly held that there is only one year of accrual for contested taxes, i.e., the year of origin, and refused to apply the "all events test" that is set forth in *Dixie Pine* and codified in section 461 of the Tax Code. That, however, is not an accurate description of the panel's analysis. The panel acknowledged that two critical dates exist for a party that wishes to seek foreign tax credits based on a contested tax liability. As the panel opinion explained, "[F]or the purpose of determining in what year the right to claim the credit arises, the contested tax doctrine and section 461 apply. For the purpose of determining against which U.S. tax the foreign tax is to be credited, the contested tax doctrine does not apply, and the tax is held to have accrued in the taxable year 'to which the tax relates.'" Slip op. at 13.

Thus, pursuant to section 461, Albemarle did not have the right to claim a foreign tax credit until 2002, when the contest was over and liability was finalized. When Albemarle filed a claim for foreign tax credits, however, the credits were offset against its tax liability for the year 1998 under the relation-back doctrine. Therefore, contrary to Albemarle's assertion, the panel explicitly acknowledged the applicability of section 461, i.e., the all-events test, to the contested foreign tax situation.

Albemarle also faults the panel for holding that the company's 1997 tax liability accrued in 1997, not in 2002. *See* Pet. at 6. But Albemarle itself admitted that foreign tax liability "accrues" in its year of origin for purposes of the foreign tax credit statutes (specifically, sections 901 and 905). *See* 26 U.S.C. § 901(b)(1) ("[The following amounts shall be allowed as the credit: . . .] the amount of any income, war profits, and excess profits taxes paid or accrued during the taxable year . . ."); Appellant's Br. 20 (stating that under section 901(b)(1) "a foreign tax credit may only be claimed for a year in which foreign tax was 'paid or accrued.'").

3. Albemarle takes issue with the court's citation of Treasury Regulation 1.904-2(c)(1), 26 C.F.R. § 1.904-2(c)(1), which deals with carryback and carryover of unused foreign taxes under the per-country limitation on foreign tax credits. Albemarle argues that the court's analysis is flawed because the per-country limitation on foreign tax credits has been repealed.

There are three problems with Albemarle's argument. First, while it is true that the statute that created a per-country limitation on foreign tax credits has been repealed, the corresponding regulation has not been repealed, presumably because the regulation continued to apply to transactions that pre-dated the statutory repeal. Second, the validity of the panel opinion does not depend on the existence of the per-country limitation. The point

of citing the regulation was not to address the substance of the per-country limitation, but simply to show that the phrase "actually paid or accrued," which appears in both the regulation and in section 6511(d)(3)(A), was given the same interpretation under the regulation that the government contends it should have under section 6511(d)(3)(A). Third, in addition to Treasury Regulation 1.904-2(c)(1), the court cited the accompanying provision, section 1.904-2(c)(2). That regulation, which applies when an overall limitation is imposed in a tax year, contains language identical to the pertinent language of section 1.904-2(c)(1). The overall limitation on tax credits has not been repealed, so the point made in the panel opinion is fully supported by the language of section 1.904-2(c)(2), even if the repeal of the per-country limitation were somehow regarded as undermining the usefulness of section 1.904-2(c)(1) as a guide to the proper interpretation of the phrase "actually paid or accrued."

4. Albemarle next argues that the "anomalous result" that the panel stated would flow from Albemarle's proposed interpretation of the phrase "actually paid or accrued," *see* slip op. at 9-10, would never occur. The panel noted that Albemarle's interpretation of the term "actually paid or accrued" would have the plainly unintended consequence that the credit for a contested foreign tax would be allocated to one year (the year of origin), but counted toward the limitation applicable to another year (the contest resolution year).

Albemarle acknowledges that under Treasury Regulation 1.904-2(c), taxes that "actually accrue" in a given year should be taken into account against the tax credit limitation for that year. *See* Pet. at 12. Nonetheless, Albemarle asserts that section 1.904-2(c) does not apply to contested taxes, so that even if contested taxes "actually accrue" in the contest resolution year, they are not counted toward the credit limitation for that year. According to Albemarle, that is because contested taxes are creditable

taxes "deemed . . . accrued other than by reason of section 904(d) [the carry rule, now section 904(c)]" in the year of origin. *See* 26 C.F.R. §§ 1.904-2(b)(2), 1.904-2(c)(1)(ii)(b), and 1.904-2(c)(2)(ii)(b). Thus, in Albemarle's view contested taxes cannot be counted toward the limitation of the contest resolution year as taxes "actually . . . accrued" in that year. *See* 26 C.F.R. §§ 1.904-2(c)(1)(ii)(a), 1.904-2(c)(2)(ii)(a).

Albemarle cites no authority for the proposition that contested taxes should be "deemed . . . accrued other than by reason of section 904(d)" in the year of origin. It simply asserts that contested taxes "clearly fall within the foregoing language" and that no other category of taxes would fit that definition.

Albemarle is wrong on both counts. First, taxes "deemed paid or accrued . . . other than by reason of section 904(d)" is not a category that some taxes can just "fall within." The Tax Code has clear and explicit definitions regarding what constitutes a tax "deemed paid or accrued." *See* 26 U.S.C. § 904(c) (unused taxes carried from another year "shall be taxes deemed paid or accrued" in the year to which such taxes are carried); § 902(a)("[A] domestic corporation which owns 10 percent or more of the voting stock of a foreign corporation from which it receives dividends in any taxable year shall be deemed to have paid the same proportion of such foreign corporation's post-1986 foreign income taxes . . ."); § 907(b)(2)(B) ("any income, war profits, and excess taxes paid or accrued (or deemed to have been paid or accrued under section 902 or 960) during the taxable year . . ."); § 960(a)(1) ("Deemed paid credit"). Thus, a taxpayer cannot unilaterally define a category of "deemed paid or accrued" taxes, outside the confines of the Code and regulations.

Second, Albemarle is wrong that no other category of taxes fits the definition of "deemed paid or accrued . . .

other than by reason of section 904(d)." Section 907(b)(2)(B), for example, states that some taxes are "deemed to have been paid or accrued under section 902 or 960," which are taxes "deemed paid or accrued . . . other than by reason of section 904(d)." *See also* 26 U.S.C. § 901(a)("[T]he tax imposed by this chapter shall . . . be credited with the amounts provided in . . . subsection (b) plus, in the case of a corporation, the taxes deemed to have been paid under sections 902 and 960.").

Because contested taxes are not "deemed . . . accrued other than by reason of section 904(d)," Albemarle's contention that Treasury Regulation 1.904-2(c) does not apply to contested taxes is incorrect. Albemarle's proposed interpretation of "actually . . . accrued" would thus lead to the anomalous result that contested taxes would be taken as credits in the year of origin, yet counted toward the credit limitation in the contest resolution year. For that reason, as well as the other reasons set forth above and in the panel opinion, we reject Albemarle's interpretation of the statutory phrase "actually paid or accrued."

The petition for rehearing is denied.